UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KENNETH LANSDEN, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Case No. 09-CV-2165 |
| ) | |
| RANDY GROUNDS, Warden,[1] ) | |
| ) | |
| Respondent. ) | |

**OPINION**

On July 16, 2009, Petitioner, Kenneth Lansden, paid the $5.00 filing fee and his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) was considered filed in this court. On July 20, 2009, this court entered an Order (#6) which denied Petitioner's Motion for Appointment of Counsel (#3) and ordered Respondent, Randy Grounds, to file a response to the Petition pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. On October 16, 2009, Respondent filed his Answer (#13) to the Petition and also filed supporting exhibits (#14). On January 27, 2010, Petitioner filed his Reply (#17).

This court has carefully reviewed the arguments of the parties and the numerous exhibits filed in this case. Following this careful and thorough review, Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DENIED.

FACTS

In June 2006, Petitioner was found guilty, following a bench trial, of unlawful manufacture of a controlled substance in that Petitioner manufactured 900 grams or more of a substance

---

[1] Randy Grounds is substituted for Julius Flagg as Respondent because Grounds has succeeded Flagg as Warden of Robinson Correctional Center, where Petitioner is incarcerated.

containing methamphetamine. Petitioner was represented at trial by retained counsel, Todd M. Reardon, and signed a written waiver of his right to a jury trial on April 17, 2006. On that date, the trial court fully admonished Petitioner of his right to a jury trial before accepting the waiver. Petitioner specifically denied that anyone had forced or threatened him to waive his right to a jury trial or that any promises had been made to him to get him to waive that right.

On the date of the bench trial, the parties entered into a written stipulation regarding the facts which was signed by the prosecutor and Attorney Reardon. Following an explanation by the trial judge, Mitchell K. Shick, Petitioner stated that he understood that, in the stipulation, he was asking the judge to accept what was stated as the testimony of the persons listed. Petitioner stated that he did not have any doubt or hesitation about asking the judge to accept the stipulation and that he had freely and voluntarily agreed to the stipulation.

The stipulation stated that Officer Brad Poehler would testify that, on July 14, 2005, he made a traffic stop on a vehicle driven by Jason C. Hawkins. Poehler arrested Hawkins for driving on a suspended license. Petitioner was a passenger in the vehicle. Poehler searched the vehicle incident to arrest and found, under the parking brake, a plastic bag containing a white powdery substance. Jason Hawkins would testify that, prior to the traffic stop, he met with Petitioner at Petitioner's home. Hawkins saw what he believed to be a methamphetamine lab in Petitioner's home. Petitioner asked Hawkins to drive him into the country for the manufacture of methamphetamine. Inspector Don Sweeney would testify that he field tested the white powdery substance found in the vehicle and the field test identified the substance as methamphetamine. Later that day, Sweeney executed a search warrant at Petitioner's home. In the bedroom, Sweeney found 1,175.7 grams of a liquid substance, contained in two separate jars, that field tested positive for methamphetamine. Sweeney also found items commonly used in the manufacture of methamphetamine, including coffee filters

with residue, a digital scale with residue, lithium batteries, hydrochloric acid generators, Coleman fuel, acetone, and denatured alcohol.

The stipulation further provided that Inspector Jim Hite would testify that, on July 15, 2005, he executed a search warrant on a storage unit rented to Petitioner. Inside the storage unit, Hite found the following items commonly used in the manufacture of methamphetamine: propane tanks with converted valves, anhydrous ammonia, Coleman fuel, air purifying respirators, tubing and mineral spirits. The stipulation stated that Amy Parker, a forensic scientist, laboratory tested the powdery substance and samples taken from the liquids and found methamphetamine present. Attached to the stipulation were police reports prepared by Poehler, Sweeney and Hite.

Based upon the stipulated evidence, Petitioner's retained counsel moved for a directed finding, arguing that the State had not proved the manufacture of 900 grams. After the circuit court denied this motion, Petitioner's counsel presented the affidavit of Jonathan Blitz, Ph.D., a professor of chemistry at Eastern Illinois University. The affidavit provided that Dr. Blitz performed scientific testing on the two liquid substances and determined that the percentage of methamphetamine in one sample was 0.0028% and in the other was 0.0012%. Dr. Blitz also expressed the opinion that the "retention time" led him to speculate that the "two substances may actually not be methamphetamine but a compound with a similar, but not identical, retention time." When admonished by the trial court about the stipulation, Petitioner expressed understanding that, by offering Dr. Blitz's affidavit, he was giving up his right to call Dr. Blitz as a witness. After being fully admonished regarding his right to testify, Petitioner declined to testify at the bench trial.

Petitioner's counsel argued that the State failed to prove that the substance was methamphetamine and, even if the State proved the substance was methamphetamine, the State failed to prove Defendant manufactured or possessed 900 grams. The trial court found Petitioner

guilty as charged.

On August 17, 2006, Petitioner was sentenced to a term of 20 years in the Illinois Department of Corrections. Petitioner filed a notice of appeal, but later filed a motion to dismiss the appeal, which was granted on March 19, 2007. In his Petition (#1) filed with this court, Petitioner stated that his appeal was withdrawn because the appellate defender assigned to his case advised him there were no issues for argument. However, the exhibits filed by Respondent include an affidavit, signed by Petitioner on March 7, 2007, which stated that he entered into an agreement to withdraw his appeal in exchange for the dismissal of Coles County criminal charges which had been pending against him since 2003.[2]

On August 6, 2007, Petitioner filed a pro se petition for post-conviction relief in the circuit court of Coles County. Petitioner argued that he was denied the effective assistance of his trial counsel because: (1) his counsel ignored Petitioner's request to have his case assigned to a different judge other than Judge Shick; (2) his counsel failed to investigate and call witnesses to testify; (3) his counsel improperly informed Petitioner to waive his right to a preliminary hearing; (4) his counsel failed to file a motion for dismissal based upon the failure to provide a prompt and timely probable cause hearing; (5) his counsel failed to challenge the warrantless arrest and the evidence derived thereafter as fruits of the poisonous tree; (6) his counsel's demand for additional money in order to proceed with a jury trial forced Petitioner to proceed via stipulated bench trial; (7) his counsel failed to subject the prosecution's case to meaningful adversarial testing; and (8) his counsel's incorrect information deprived Petitioner of his right to testify.

---

[2] The record shows that, if Petitioner had been convicted of the 2003 charges, the sentence on that conviction would be consecutive to the 20-year sentence imposed for his conviction of manufacture of a substance containing methamphetamine.

On August 31, 2007, Circuit Judge Gary W. Jacobs issued a lengthy written ruling. Judge Jacobs carefully considered all of Petitioner's claims of ineffective assistance of counsel and dismissed Petitioner's pro se petition as frivolous or "otherwise patently without merit." Judge Jacobs noted, that as far as the failure of Petitioner's counsel to seek a substitution of judge, he had reviewed all transcripts of proceedings and the record was "devoid of any request by petitioner to seek a substitution of judge as a matter of right or for cause." Judge Jacobs stated that "Petitioner could easily have raised this issue before the trial court at numerous times if, as now, he had concerns about Judge Shick presiding over the case." Judge Jacobs also stated that the evidence of Petitioner's guilt was overwhelming and the result of the trial would have been no different even without counsel's alleged deficiencies.

Petitioner filed a notice of appeal. While Petitioner had alleged eight claims of ineffective assistance of counsel in his pro se post-conviction petition, Petitioner raised only two of those claims on appeal. Petitioner argued that he was denied the effective assistance of counsel where: (1) counsel's demand for additional money to proceed with a jury trial forced Petitioner to proceed by way of a stipulated bench trial; and (2) counsel failed to file a motion for substitution of judge on the grounds that the trial judge, Judge Shick, (a) had adopted Petitioner's girlfriend's daughter and had told Petitioner's girlfriend that he would not let her see her daughter if she continued to date Petitioner and (b) was the judge on Petitioner's other pending drug case.

On August 28, 2008, the Appellate Court, Fourth District, affirmed the dismissal of Petitioner's petition for post-conviction relief in an unpublished order. People v. Lansden, Case No. 4-07-0805. The Appellate Court first concluded that Petitioner's argument that his counsel forced him to proceed with a bench trial was rebutted by the record. Lansden, Case No. 4-07-0805, at p. 9-11. The Appellate Court next concluded that Petitioner did not provide adequate support for his

argument that his counsel should have filed a motion for substitution of judge. The Court stated:

> [Petitioner] attached to his postconviction petition his own affidavit in support of the claim as well as two pictures purporting to show [Petitioner's] girlfriend and her daughter at Judge Shick's house. However, [Petitioner] does not attach an affidavit from his girlfriend asserting that Judge Shick told her to stop dating [Petitioner] or that the pictures were taken at Judge Shick's house. Further, [Petitioner's] affidavit contains inadmissible hearsay and is insufficient to support his claim.

Lansden, Case No. 3-07-0805, at p.11. The Court stated that Petitioner's "failure to support the claim with competent affidavits, records, or other evidence or explain the absence of such material justified a first-stage dismissal." Lansden, Case No. 4-07-0805, at p.12. The Court also concluded that Petitioner could not show prejudice because the evidence against Petitioner was overwhelming so that he could not "show that the outcome of the trial would have been different with a different judge." Lansden, Case No. 4-07-0805, at p.12. The Court further noted that a judge is not disqualified from hearing a case merely because he presided over a previous case involving the same defendant. Lansden, Case No. 4-07-0805, at p.12.

Petitioner filed a petition for leave to appeal with the Illinois Supreme Court raising the same issues raised in the appellate court. The petition was denied on January 28, 2009.

As noted previously, Petitioner's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#4) was filed in this court on July 16, 2009.

ANALYSIS

I. ISSUES RAISED

In his Petition, Petitioner raised three claims: (1) that he was not given a fair trial by an impartial judge and his conviction was solely based on stipulated evidence which the court did not admonish him was tantamount to a plea of guilty; (2) that he received ineffective assistance of counsel at the circuit court level because his counsel failed to preserve a defense at trial, failed to file a motion for substitution of judge and failed to explain the consequences of a stipulated bench trial and at the appellate level because his appellate counsel gave him incompetent advice; and (3) that he was convicted based upon stipulated evidence which did not prove his guilt beyond a reasonable doubt.

In his Answer, Respondent argued that all of Petitioner's claims have been procedurally defaulted. In his Reply, Petitioner argued that Respondent has admitted that he has exhausted his state court remedies, so he cannot have procedurally defaulted his claims. Petitioner also contends that any procedural default should be excused in this case.

II. PROCEDURAL DEFAULT

Because Petitioner filed his habeas petition after April 24, 1996, the petition is reviewed pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Lindh v. Murphy, 521 U.S. 320, 336 (1997); Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999). As amended by the AEDPA, 28 U.S.C. § 2254(b)(1)(A) "authorizes the issuance of a writ of habeas corpus only if the petitioner has exhausted all available state remedies." Rodriguez, 193 F.3d at 916. The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Providing a full and fair opportunity requires the petitioner to exhaust

his state remedies <u>and</u> to avoid procedurally defaulting his claims during the state court proceedings. Schaff v. Snyder, 190 F.3d 513, 524 (7th Cir. 1999), quoting Moore v. Parke, 148 F.3d 705, 708 (7th Cir. 1998). Both are required and, if a habeas petitioner fails to meet either of these requirements, a court is barred from reaching the merits of his claims in a federal habeas proceeding. Schaff, 190 F.3d at 524; see also Thomas v. McCaughtry, 201 F.3d 995, 999 (7th Cir. 2000), citing 28 U.S.C. § 2254(b), (c). The United States Supreme Court has held that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process. Boerckel, 526 U.S. at 845; Howard v. O'Sullivan, 185 F.3d 721, 725 (7th Cir. 1999). Therefore, in order to avoid procedurally defaulting his claims, a habeas petitioner in Illinois must raise his claims on appeal, including raising each claim in a petition for leave to appeal to the Illinois Supreme Court. Boerckel, 526 U.S. at 848.

   It is true, and Respondent recognized, that Petitioner pursued state court remedies in this case. Petitioner filed a direct appeal from his conviction and also filed a pro se post-conviction petition, appealed the denial of the post-conviction petition, and filed a petition for leave to appeal with the Illinois Supreme Court. Where, "as in this case, the petitioner has already pursued his state-court remedies and there is no longer any state corrective process available to him, it is not the exhaustion doctrine that stands in the path to habeas relief, *see* 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default." Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004). "Thus, when the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim." Perruquet, 390 F.3d at 514, citing Boerckel, 526 U.S. at 853-54. As already noted, Petitioner was required to raise each of his claims on appeal and in a petition for leave to appeal to the Illinois Supreme Court. Therefore,

Petitioner has procedurally defaulted his claims if the claims he is raising in his Petition (#1) with this court were not raised in his appeal to the Illinois appellate court and in his petition for leave to appeal to the Illinois Supreme Court.

In his Petition (#1), Petitioner stated that he did not raise his claims in the Illinois courts. Therefore, this court agrees with Respondent that it is clear that most of Petitioner's claims have been procedurally defaulted. Respondent has pointed out, however, that Petitioner actually did raise his claim regarding his counsel's failure to request a substitution of judge in his post-conviction petition, in his appeal from the denial of that petition and in his petition for leave to appeal to the Illinois Supreme Court.

However, even when a petitioner has presented a claim to the state courts, that claim will be considered procedurally defaulted if the state courts rejected the claim "on independent and adequate state procedural grounds." Coleman v. Thompson, 501 U.S. 722, 730 (1991); see also Perruquet, 390 F.3d at 514. "A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time–as state rules define those courts, ways, and times." Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002), citing Wainwright v. Sykes, 433 U.S. 72 (1977). "Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review." Szabo, 313 F.3d at 395. "Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim." Miranda v. Leibach, 394 F.3d 984, 991-92 (7th Cir. 2005).

In this case, the Illinois appellate court noted that Petitioner had attached only his own signed affidavit in support of his claim that his counsel should have filed a motion for a substitution of judge. See Lansden, Case No. 4-07-0805, at p.11. The appellate court pointed out that Petitioner

9

did not attach an affidavit from his girlfriend "asserting that Judge Shick told her to stop dating [Petitioner] or that the pictures were taken at Judge Shick's house." Lansden, Case No. 4-07-0805, at p.11.  The appellate court also determined that Petitioner's affidavit contained "inadmissible hearsay and [was] insufficient to support his claim." Lansden, Case No. 4-07-0805, at p.11.  The appellate court concluded that dismissing Petitioner's post-conviction petition was proper because Petitioner failed "to support the claim with competent affidavits, records, or other evidence or explain the absence of such material." Lansden, Case No. 4-07-0805, at p.12.

     The Illinois appellate court is correct that, under the Illinois Post-Conviction Hearing Act, a petitioner is required to support the factual allegations of his petition by attaching affidavits, records, or other evidence, or to explain why such supporting material is not attached.  725 Ill. Comp. Stat. 5/122-2 (West 2008).  The appellate court found that Petitioner failed to comply with this requirement, citing People v. Barcik, 848 N.E.2d 579 (Ill. App. Ct. 2006).  In Barcik, the court stated that a defendant must attach affidavits in support of his post-conviction petition or explain in the petition why affidavits were not attached.  Barcik, 848 N.E.2d at 585-86.  In Smith v. Evans, 2009 WL 196301 (N.D. Ill. 2009), the district court confronted a similar situation where the appellate court determined that the petitioner's claim was properly dismissed because the petitioner failed to provide affidavits in compliance with the mandates of the Illinois Post-Conviction Hearing Act.  Smith, 2009 WL 196301, at *11.  The district court concluded that the state court relied on an independent and adequate state ground so that the petitioner's claim was procedurally defaulted. Smith, 2009 WL 196301, at *11.  This court agrees with Respondent and the reasoning in Smith and concludes that, because the appellate court rejected Petitioner's claim on the ground that he failed to comply with the requirements of the Illinois Post-Conviction Hearing Act, Petitioner procedurally

defaulted the claim so that federal habeas review of the claim is barred.[3]

In his Petition (#1), Petitioner stated that his claims were not raised in the Illinois courts because he did not have knowledge of his rights and was not adequately advised by his trial counsel, appellate counsel or legal services in the Illinois Department of Corrections. In his Reply (#17), Petitioner argued that any procedural default should be excused based upon the "cause and prejudice" standard.

"Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." Daniels v. Knight, 476 F.3d 426, 430 (7th Cir. 2007), quoting Dretke v. Haley, 541 U.S. 386, 388 (2004). Therefore, in order to obtain review of procedurally defaulted claims, a habeas petitioner must demonstrate cause for his state-court default of the claim and prejudice therefrom. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Momient-El v. DeTella, 118 F.3d 535, 541 (7th Cir. 1997). In addition, a petitioner can avoid procedural default if procedural default would lead to a fundamental miscarriage of justice. See Smith v. McKee, 598 F.3d 374, 388 (7th Cir. 2010).

To demonstrate cause for the procedural default, the petitioner must show that an "objective factor external to the defense" impeded compliance with the State's procedural rule such as: "(1) interference by officials that makes compliance . . . impractical; (2) constitutionally ineffective

---

[3] This court also agrees with Respondent that the fact that the appellate court went on to determine that Petitioner was not prejudiced under the standard set out in Strickland v. Washington, 466 U.S. 668 (1984) does not change this conclusion. The fact that a state court reached the merits of the federal claim in an alternative holding does not change the fact that it relied on an adequate and independent state ground as a procedural bar. Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); see also Smith v. McKee, 598 F.3d 374, 383 (7th Cir. 2010); Brooks v. Walls, 279 F.3d 518, 523-24 (7th Cir. 2002).

assistance of counsel; [or] (3) a showing that the factual or legal basis for a claim was not reasonably available to counsel." Guest v. McCann, 474 F.3d 926, 930 (7th Cir. 2007), quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478 (1986). Petitioner's first excuse for his procedural defaults is that Petitioner did not have knowledge of his rights. The Seventh Circuit has held that a petitioner's limitations, whether mental retardation, youth, lack of education, or illiteracy, cannot constitute cause to excuse procedural default because they "are not external impediments within the context of excusing procedural default." Harris v. McAdory, 334 F.3d 665, 669 (7th Cir. 2003). This court agrees with the Respondent that any lack of knowledge on the part of Petitioner is not an external impediment and therefore does not constitute cause to excuse Petitioner's procedural default.

Petitioner's second excuse for his procedural defaults is that his trial attorney, appellate attorney and legal services at the Illinois Department of Corrections did not give him proper advice.[4] However, Respondent is correct that these claims have been procedurally defaulted as well. "[T]he assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." Lee v. Davis, 328 F.3d 896, 901 (7th Cir. 2003), citing Edwards v. Carpenter, 529 U.S. 446, 453 (2000); see also Lewis, 390 F.3d at 1026 ("a claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for a procedural default of another claim"). Therefore, because Petitioner procedurally defaulted his ineffective assistance of counsel claims, these claims cannot constitute cause for the procedural default of his claims in this case.

This court also agrees with the Respondent that Petitioner has failed to demonstrate that the

---

[4] This court notes that Petitioner has no constitutional right to the effective assistance of counsel from legal services at the Illinois Department of Corrections.

fundamental miscarriage of justice exception applies in this case. The "fundamental miscarriage of justice" exception is a "high bar" and "requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Smith, 598 F.3d at 587, quoting Schlup v. Delo, 513 U.S. 298, 327 (1995); see also House v. Bell, 547 U.S. 518, 536-57 (2006). A petitioner who asserts "actual innocence" to excuse a procedural default "must *demonstrate* innocence; the burden is his, not the state's, for the state has the benefit" of the state court conviction. See Buie v. McAdory, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original).

This court agrees with Respondent that Petitioner has not attempted to argue that failure to consider his defaulted claims would result in a fundamental miscarriage of justice. This court further agrees with Respondent that the record in this case would defeat any such claim. The stipulated facts in this case, supported by voluminous police reports, provided overwhelming evidence of Petitioner's guilt.

Therefore, because Petitioner's procedural defaults cannot be excused on the grounds of cause and prejudice, or on grounds of fundamental miscarriage of justice, Petitioner's claims are procedurally defaulted and his Petition (#1) must be denied.

### III. CERTIFICATE OF APPEALABILITY

A petitioner may appeal a district court's denial of a writ of habeas corpus only when the petitioner has been issued a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1). To obtain a COA, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a district court dismisses a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, as in the case at bar, the petitioner must meet the standard set out by the United States Supreme Court in Slack v. McDaniel in order to obtain a COA.

The Court stated:

> [A] COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

<u>Slack</u>, 529 U.S. 473, 484 (2000) (emphasis added).

This court has concluded that Petitioner has procedurally defaulted all of the claims in this case. As this court has denied Petitioner's Petition (#1) on procedural grounds, Petitioner has the burden to show that: 1) jurists of reason would find it debatable whether the petition states a valid denial of constitutional rights; <u>and</u> 2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. This court concludes that Petitioner can make neither showing in this case. Therefore, this court concludes that a COA is unwarranted.

IT IS THEREFORE ORDERED THAT:

(1) Randy Grounds is substituted for Julius Flagg as the Respondent in this case.

(2) Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DENIED.

(3) A certificate of appealability is DENIED.

(4) This case is terminated.

ENTERED this  16th  day of   September , 2010.

s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

14